IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| ROBERT RHYNE, II, *et al.*, <br> Plaintiffs, <br><br> v. <br><br> MARTIANCRAFT, LLC, <br> Defendant. | Civil Action No. 2:20cv568 (RCY) |

### MEMORANDUM OPINION

This matter is before the Court on Plaintiffs' Motion to Remand and to Stay Briefing Schedule for Defendant's Motion to Dismiss (ECF No. 4). Robert Rhyne, II, Joseph Keeley, and Melissa Rhyne ("Plaintiffs") bring this action against MartianCraft, LLC ("MartianCraft" or "Defendant") seeking declaratory and injunctive relief. Defendant removed this case to federal court, and Plaintiffs move to remand the action to the Norfolk Circuit Court. The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Motion to Remand will be denied, and the Motion to Stay Briefing Schedule will be denied as moot.

### I. BACKGROUND

This is a lawsuit for declaratory and other equitable relief, brought by three individuals who are or were affiliated with a Virginia-based software development company, MartianCraft, LLC, against MartianCraft. The parties have been engaged in a protracted legal dispute since 2017 over control of the company and related damages that has played out before the Richmond Circuit Court and the Supreme Court of Virginia. In the instant action, filed in the Norfolk Circuit Court, the Plaintiffs raise five claims for equitable relief: (1) a declaratory judgment, based on

1

MartianCraft's Operating Agreement, that the Plaintiffs are entitled to indemnification by MartianCraft for their legal fees in the Richmond Circuit Court action (allegedly worth hundreds of thousands of dollars); (2) a declaratory judgment that, under the Operating Agreement, they cannot be held liable for damages claimed in the Richmond Circuit Court lawsuit; (3) access to records and information from MartianCraft; (4) a calculation of their membership interests and a determination that prior dilutions of their membership interests were wrongful; and (5) an accounting of MartianCraft's finances, records, and activities, with fourteen specific categories of information requested.  (Compl., ECF No. 1-2 at 14-27.)[1]

MartianCraft is a software development company that was formed in 2010 by Plaintiff Robert Rhyne, II ("R. Rhyne") and two other individuals who later transferred their interests in the company.  (*Id.* ¶¶ 1-3, 16.)  MartianCraft entered into a Plan of Merger with Empirical Development LLC, a company owned by Kyle Richter and Marcus Zarra, on February 3, 2014.  (*Id.* ¶¶ 5-6.)  Plaintiffs contend that this merger was never actualized in accordance with the terms of the Plan of Merger, and that subsequently, in September 2014, an Operating Agreement was entered into on behalf of MartianCraft that included Richter, R. Rhyne, Zarra, and one of the original MartianCraft members, along with a few other signatories.  (*Id.* ¶¶ 9, 12-15.)

A dispute among members of MartianCraft apparently arose by 2017.  MartianCraft claims that all members except for Richter had resigned from the board by the fall of 2017, and then those resigned members, including Plaintiff R. Rhyne, "attempted to forcibly take control of the Company."  (Mem. Opp'n Mot. Remand, ECF No. 7 at 4 n. 4.)  On November 8, 2017, R. Rhyne and another purported member, Nathan Eror, executed a written Consent of Members in Lieu of Meeting ("First Consent") that sought to remove Richter as CEO of the company and as a member

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system for citations to the parties' submissions.

of the board.  (Compl. ¶¶ 17-18.)  Under this purported Consent, Plaintiffs Melissa Rhyne ("M. Rhyne") and Joseph Keeley ("Keeley") were brought into the company, with Melissa Rhyne to serve as a manager and member of the board, and Keeley to serve as Chief Technology Officer.  (*Id.* ¶ 18.)  On May 23, 2018, four purported members—Plaintiffs Robert and Melissa Rhyne, along with Eror and Nick Keppol—executed a second Consent of Members in Lieu of Meeting ("Second Consent"), which again purported to remove Richter as CEO and board member and add Keeley and Keppol as members.  (*Id.* ¶ 19.)

Meanwhile, in December 2017, MartianCraft, acting through its purported members after the First Consent, filed a lawsuit against Richter in Richmond Circuit Court based on alleged "acts of misfeasance and malfeasance."  (*Id.* ¶ 22.)  Richter responded by challenging the authority of these members and filing a counterclaim against them.  (*Id.* ¶¶ 22-23.)  Then, on June 25, 2018, Richter, claiming to be the sole remaining member on the MartianCraft Board of Directors, executed a Written Consent ("Richter Consent") that purported to dissociate R. Rhyne, Keeley, and others as members of MartianCraft.  (Mem. Opp'n Mot. Remand at 5.)  Significant legal wrangling ensued, including rulings from the Richmond Circuit Court and the Supreme Court of Virginia.  (*See* Compl. ¶¶ 22-34.)  Crucially, these state courts largely ruled in favor of Richter on his claim to be the rightful board member and manager of MartianCraft, and it was determined that he successfully dissociated the others, including Plaintiffs R. Rhyne and Keeley, from membership.  (*See id.* ¶¶ 27-30; Mem. Opp'n Mot. Remand at 5; Not. Removal Ex. E, ECF No. 1-6; Not. Removal Ex. F, ECF No. 1-7.)  The parties are still litigating various claims and counterclaims in Richmond Circuit Court.

Crucial to the instant Motion, Judge Marchant, who is overseeing the Richmond Circuit Court litigation, ruled that the Richter Consent issued on June 25, 2018, was valid under the

MartianCraft Operating Agreement because Richter was the only MartianCraft board member at that time. (Not. Removal Ex. E.) Accordingly, Judge Marchant ruled that the Richter Consent left Richter as "the sole remaining CEO, manager, and director, and only remaining member with any management authority . . . ." (Not. Removal Ex. F at 4.) Thus, "Robert Rhyne, II, Joseph Keeley, and Nicholas Keppol continue to hold an ownership interest, but not management authority, and shall have the same rights as an assignee of the membership interest would have under Subsection A of § 13.1-1309 of the Virginia Code." (*Id.*) Judge Marchant reiterated this ultimate conclusion after the Supreme Court of Virginia remanded the case to him for further consideration. (Not. Removal Ex. G, ECF No. 1-8.)

The June 25, 2018 Richter Consent provided in part that, "[t]he following members are removed as Members of the Company and shall have no further rights to participate in the management and affairs of the Company. a) Robert Rhyne II, b) Nathan Eror, c) Joseph Keeley, d) Nick Keppol." (Not. Removal Ex. C, ECF No. 1-4 at 2.) As did Judge Marchant's opinion and order, the Richter Consent clarified that the dissociation of these members "shall not affect the respective membership interest held by such member or the former member's successor in interest. The former member or successor in interest shall continue to hold a membership interest and shall have the same rights as an assignee of the membership interest would have under subsection A of § 13.1-1039 of the Virginia Code, as amended." (*Id.*)

The instant claim was first filed by Plaintiffs R. Rhyne, Joseph Keeley, and M. Rhyne in Norfolk Circuit Court, and MartianCraft was served with the Summons and Complaint on October 16, 2020. (Not. Removal, ECF No. 1 ¶ 1; ECF No. 1-2.) On November 13, 2020, MartianCraft removed the case to federal court, claiming that this Court has diversity jurisdiction over the action because the amount in controversy exceeds $75,000 and the parties are completely diverse. (Not.

4

Removal ¶¶ 6-11.)  Defendant asserts that Plaintiffs R. Rhyne and M. Rhyne are California citizens and Plaintiff Keeley is a Colorado citizen.  (*Id.* ¶ 8.)  MartianCraft further asserts that it is an Alaska citizen, based on the citizenship of its sole member, Kyle Richter.  (*Id.* ¶¶ 9-10.)

On November 22, 2020, the Plaintiffs filed the instant Motion to Remand and to Stay Briefing Schedule for Defendant's Motion to Dismiss. (ECF No. 4.)  The Plaintiffs claim that because they are still "members" of MartianCraft for purposes of diversity jurisdiction, there is not complete diversity of citizenship because they have the same citizenship as the Defendant, MartianCraft, LLC.  (Mem. Supp. Mot. Remand, ECF No. 5 at 1-2.)  Accordingly, they seek to have the case remanded to Norfolk Circuit Court.  On November 23, the Court entered an Order that denied Defendant's request to consider its state court demurrer as a motion to dismiss under Rule 12 and stayed the filing of responsive pleadings until a ruling on the Motion to Remand. (ECF No. 6.)  This ruling mooted the Plaintiffs' request to stay briefing on the Defendant's motion to dismiss until the jurisdictional issue is decided.

## II. MOTION TO REMAND

This Motion raises a distinct issue: does the dissociation of an LLC's members pursuant to Virginia law remove those members from the LLC for purposes of federal diversity jurisdiction? If the Plaintiffs R. Rhyne and Keeley are still "members" of MartianCraft, they would have the same citizenship as Defendant MartianCraft, complete diversity would not be present, and this Court would not have subject matter jurisdiction.  The Defendant argues that once Robert Rhyne, II and Joseph Keeley were removed as members under the Richter Consent, they no longer counted towards MartianCraft's citizenship for purposes of federal jurisdiction.  Plaintiffs counter that because R. Rhyne and Keeley retain "membership interests" in MartianCraft, they still count

toward the citizenship of MartianCraft, whose citizenship is determined based on the citizenship of its "members."

**A. Legal Standard**

Federal courts are courts of limited subject matter jurisdiction. The grounds for federal diversity jurisdiction over a state court suit raising state law claims are set forth in 28 U.S.C. § 1332, which contains two key requirements: (1) that the amount in controversy exceeds $75,000, and (2) that the lawsuit is between "citizens of different States" (or foreign states or subjects). A Defendant may remove a civil action from state court to federal court if the federal court would have "original jurisdiction" over the action, that is, if the action could have been brought in federal court in the first place. 28 U.S.C. § 1441(a).

"Removal of civil cases to federal court is an infringement on state sovereignty. Consequently, the statutory provisions regulating removal must be strictly applied." *Adams v. Aero Services Int'l, Inc.*, 657 F. Supp. 519, 521 (E.D. Va. 1987) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted). "Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." *Id.* (citation omitted). "If federal jurisdiction is doubtful, a remand is necessary." *Id.* (citation omitted).

A party seeking removal based upon diversity jurisdiction must plead facts to "show that there is 'complete diversity' among all parties, such that no party has the same citizenship as any party on the other side." *Reid v. The Wailers*, 606 F. Supp. 2d 627, 629 (E.D. Va. 2009) (citing 28 U.S.C. § 1332(a); *Baltimore Cty. v. Cigna Healthcare*, 238 Fed. Appx. 914, 920 (4th Cir. 2007) (unpublished)).

**B. Citizenship of Limited Liability Companies**

The United States Supreme Court has held that while the citizenship of a corporation is determined by its state of incorporation and where it has its principal place of business, the citizenship of an artificial entity other than a corporation is that of its members. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990). This distinction stems from the fact that Congress created a special citizenship test for corporations, set forth in 28 U.S.C. § 1332(c)(1), but has not seen fit to extend that special test to limited liability companies, limited partnerships, or any other artificial entity. *Id.* at 196–97. Therefore, as clarified by the Supreme Court in the *Americold Realty Trust v. ConAgra Foods, Inc.*, while a corporation enjoys a Congressional "grant of citizenship" where it is incorporated and where its principal place of business sits, all other unincorporated entities are subject to the Supreme Court's "oft-repeated rule that diversity jurisdiction in a suit by or against [an unincorporated] entity depends on the citizenship of all [its] members." 577 U.S. 378, 381 (2016) (quoting *Carden*, 494 U.S. at 195–96 (1990) (alteration in original) (internal quotations omitted)). "While humans and corporations can assert their own citizenship, other entities take the citizenship of their members." *Id.* at 379. The Court has explained that "it is up to Congress if it wishes to incorporate other entities into 28 U.S.C. § 1332(c)'s special jurisdictional rule." *Id.* at 384.

The Fourth Circuit has extended this rule to limited liability companies (LLCs). "For purposes of diversity jurisdiction, the citizenship of a limited liability company [] is determined by the citizenship of all of its members . . . ." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004)).

7

Despite the existence of a clear general rule regarding how to determine an unincorporated association's citizenship—the association's members—the Supreme Court has yet to explicitly define who (or what) qualifies as a "member" for jurisdictional purposes. *See Americold*, 577 U.S. at 381; 13F Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3630.1 (3d ed. 2021). However, the Supreme Court and federal district courts have left some clues.

i. Recent Supreme Court Cases: *Carden* and *Americold*

Two of the Supreme Court's more recent decisions on non-corporate citizenship are instructive as to the definition of a "member" for purposes of diversity jurisdiction: *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), and *Americold Realty Trust v. ConAgra Foods, Inc.*, 577 U.S. 378 (2016).

In *Carden*, the Supreme Court held that the citizenship of a limited partnership is based on the citizenships of all of its members, to include both general partners with control over the entity and limited partners who are effectively passive investors. 494 U.S. at 186, 195-96. In so holding, the Court rejected the argument that limited partners' citizenships should not be considered because they do not exercise any control over the entity. *Id.* at 192. The Court explained:

> [W]e reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members. We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members,' . . . 'the several persons composing such association,' . . . 'each of its members' . . . .

*Id.* at 195-96 (quoting prior Supreme Court opinions, citations omitted).

The Court went on to say:

> Which [artificial entities are] entitled to be considered a 'citizen' for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction.

*Id.* at 197.

In *Americold*, the Court held that a Maryland real estate investment trust's ("REIT's") citizenship is based upon the citizenships of its shareholders. 577 U.S. at 382. The Court acknowledged that, "[d]espite our oft-repetition of the rule linking unincorporated entities with their 'members,' we have never expressly defined the term." *Id.* at 381. Then, the Court noted that in *Carden*, it "equated an association's members with its owners or the several persons composing such association." *Id.* (citing *Carden*, 494 U.S. at 196) (internal quotation marks and citation omitted). The Court then cited additional precedents in which it applied "this principle with reference to specific States' laws . . . ." *Id.* at 381-82 (citations omitted).

The Court's analysis of the specific question of the Maryland REIT's membership is instructive. The Court explained, "[n]othing in the record designates who Americold's members are. But Maryland law provides an answer." *Id.* at 382. The Court proceeded to analyze the Maryland REIT statute, mining the law for the definition of the entity and the way in which the statute described the various individuals with interests in the entity. *Id.* Ultimately, based on the statute's focus on shareholders and the way in which the shareholders' interests in the entity were defined, the Court concluded that the REIT's shareholders should be considered "members" for purposes of diversity jurisdiction. *Id.* This suggests that the state statutory definitions play a key role in determining the identity of "members" for federal jurisdictional purposes.

### ii. District Court Opinions

Neither the Fourth Circuit nor other judges in the Eastern District of Virginia have addressed the impact of an LLC member's dissociation on the LLC's citizenship for jurisdictional purposes. However, a number of federal district courts across the country have considered the issue. Many of those courts have looked to the law of the state in which the LLC is organized to

determine who qualifies as a "member." *See, e.g.*, *Salameno v. Rawlings*, 2020 WL 9256545 (S.D.N.Y. 2020) (R. & R.), *adopted*, 2021 WL 1085521 (S.D.N.Y. 2021); *Estate of Harris v. Abbott Acquisition Company, LLC*, 2017 WL 3608138 (W.D. Pa. 2017).

In *InteliClear, LLC v. Victor*, a case from the District of Connecticut cited by the Defendant, Judge Arterton assumed that the dissociation of an LLC member involved in litigation against the LLC extinguished this jurisdictional problem. 2016 WL 5746349, *5 (D. Conn. 2016) ("if Plaintiff is correct that Defendant has been properly dissociated, the Court has jurisdiction under 28 U.S.C. § 1332 because Defendant and InteliClear would be citizens of different states, leaving complete diversity intact.") Moreover, numerous federal courts from across the country have made clear that their conclusion about whether dissociation terminates LLC membership for diversity purposes is rooted in state law.

In *Dumann Realty, LLC v. Faust*, Judge Oetken explained, "[t]he question of whose citizenship constitutes part of the LLC's citizenship is ultimately governed by the law of the state of incorporation." 2013 WL 30672, *3 (S.D.N.Y. 2013) (citing *CR Holding Company, LLP v. Campbell*, 2011 WL 2357649, at *3 (D. Kan. June 3, 2011)). This approach of looking to the state law to determine the impact of dissociation on jurisdictional membership is not unique. *See Estate of Harris v. Abbott Acquisition Company, LLC*, 2017 WL 3608138 (W.D. Pa. 2017) (looking to state law and the LLC's operating agreement); *Lincoln Provision, Inc. v. Puretz*, 2013 WL 6263475 (D. Neb. 2013), *rev'd on other grounds,* 775 F.3d 1011 (8th Cir. 2015) (looking to Illinois LLC law regarding dissociation).

Applying this analytical approach to the case at bar hastens a review of the membership and dissociation provisions of the Virginia LLC Act.

### iii. Analyzing the Virginia LLC Act

A statutory analysis of the Virginia Limited Liability Company Act ("Virginia LLC Act"), Va. Code § 13.1-1000, *et seq.*, strongly suggests that dissociation terminates an LLC member's "membership" in the LLC, though an economic "membership interest" typically survives.

The statute defines "Member" as "a person that has been admitted to membership in a limited liability company . . . and that has not ceased to be a member." Va. Code § 13.1-1002. The statute does not define "dissociation," but the operation of the statute suggests that this process is what triggers an individual "ceas[ing] to be a member."

The Virginia LLC Act describes "Events causing member's dissociation" as follows:

> Except as otherwise provided in the articles of organization or an operating agreement, a member is dissociated from a limited liability company upon the occurrence of any of the following events:
> . . .
> 2. An event agreed to in the articles of organization or an operating agreement as causing the member's dissociation;
> 3. The member's expulsion pursuant to the articles of organization or an operating agreement; . . . .

Va. Code § 13.1-1040.1.

The statute makes clear, however, that unless the LLC's articles of organization or operating agreement provide otherwise, "the dissociation of a member shall not affect the membership interest held by the dissociated member or the former member's successor in interest." Va. Code § 13.1-1040.2. Using the term "former member" to describe the dissociated individual, the statute then explains that the default rule is that the individual "shall continue to hold a membership interest and shall have the same rights that an assignee of the membership interest would have under subsection A of § 13.1-1039." *Id.*

Turning, then, to the rights of an assignee of an interest (which are the same rights as held by a dissociated member), the statute explains that the interest "does not entitle the assignee to

11

participate in the management and affairs of the limited liability company or to become or to exercise any rights of a member." Va. Code § 13.1-1039. Rather, unless otherwise provided in the articles of organization or operating agreement, the individual only has the right to "any share of profits and losses and distributions to which the assignor would be entitled." *Id.* The Act presumes that an "assignee" of a membership interest is not a "member" of the LLC. The statute explains that, unless otherwise provided in the articles of organization or operating agreement, the individual:

> may become a member only by the consent of a majority of the member-managers (other than the assignor member) of a manager-managed limited liability company of which one or more members is a manager, or by a majority vote of the members (other than the assignor member) of any other limited liability company.

Va. Code § 13.1-1040.

Therefore, statutory analysis suggests that under the Virginia LLC Act, once a member is dissociated from the LLC, that individual is no longer a "member" of the LLC. This conclusion is supported by (1) the fact that the definition of a "member" excludes someone that "ceased to be a member"; (2) the statute's references to dissociated members as a "former member[s]"; and (3) the statute's default rule that a dissociated member has the same rights as an assignee of a membership interest, which individual is presumed not to be a "member."

### III. DISCUSSION

The dissociation of Plaintiffs R. Rhyne and Keeley terminated their memberships in MartianCraft for purposes of federal diversity jurisdiction. Accordingly, there is complete diversity between the Plaintiffs and MartianCraft, and the Motion to Remand will be denied.

There are a number of propositions underlying this Motion that are not seriously contested. The parties agree that the citizenship of an LLC is the same as the citizenship of each of its members. (Mem. Supp. Mot. Remand at 2-4; Mem. Opp'n Mot. Remand at 5.) The parties also

do not appear to contest that the Plaintiffs were dissociated from MartianCraft, but that they retain "membership interests" as defined by the Virginia Code. (*See* Mem. Supp. Mot. Remand at 4-5; Mem. Opp'n Mot. Remand at 3; Pl.'s Reply, ECF No. 9.)  Thus, the parties have teed up the central issue in this Motion: whether, for purposes of federal diversity jurisdiction, a Virginia LLC takes on the citizenship of individuals who were dissociated as members of the LLC, but who retain "membership interests" in the entity.

Supreme Court precedent and persuasive authority from federal district courts across the country strongly suggest that the meaning of a "member" of an association for jurisdictional purposes is determined with reference to state law. *See Americold*, 577 U.S. at 381-82; *Dumann*, 2013 WL 30672, *3 (S.D.N.Y. 2013) (citation omitted).  In the United States Supreme Court's recent *Americold* opinion, the Court looked to Maryland law to "answer" the question of who counts as a "member" of a Maryland real estate investment trust for purposes of federal jurisdiction. 577 U.S. at 382.  This approach makes sense.  Artificial entities such as LLCs are predominately creatures of state law, so an analysis of their composition naturally begins with the state laws that authorize and define them.  This is so even when the jurisdictional question is rooted in federal law.

The Virginia LLC Act provides ample support for the conclusion that the dissociation of R. Rhyne and Keeley through the Richter Consent terminated each of their statuses as "members" of the LLC.  The statute excludes those who "ceased to be a member" from the definition of a "member." Va. Code § 13.1-1002.  In describing the process through which individuals cease to become members—dissociation—the statute allows for dissociation when an event triggering dissociation described in the LLC's articles of organization or operating agreement occurs, including expulsion. Va. Code § 13.1-1040.1.  As the Richmond Circuit Court found, this is what

13

happened in the Richter Consent, which "removed" R. Rhyne and Keeley "as Members of the Company" pursuant to Section 8.3 of the MartianCraft Operating Agreement.[2] (Not. Removal Ex. C at 2; Not. Removal Ex. E at 5-7.) Therefore, a Virginia state court determined that R. Rhyne and Keeley ceased to be members of MartianCraft on June 25, 2018, and they were left with only "membership interests." These membership interests, the Virginia LLC Act makes clear, do not confer the same rights that membership does. Indeed, the law indicates that an individual with a membership interest is not a "member" and would need to take additional steps to become one. Va. Code §§ 13.1-1040.2 (dissociated member has same rights as an assignee of a membership interest), 13.1-1039 (rights of assignee), 13.1-1040 (right of assignee to become member).

Based on the above analysis, Robert Rhyne, II and Joseph Keeley are not currently "members" of MartianCraft for purposes of state law. The Court further finds that they are not "members" of MartianCraft for purposes of federal diversity jurisdiction. This conclusion should not be surprising: dissociation is the very process through which members of an LLC are removed and lose their status. Accordingly, MartianCraft does not take on Robert Rhyne, II's or Joseph Keeley's citizenship, and is only an Alaska citizen based on the citizenship of its sole member, Kyle Richter. Because Plaintiffs collectively are citizens of California and Colorado and MartianCraft is a citizen of Alaska, (Not. Removal ¶ 8), complete diversity exists in this matter. The parties do not dispute that the amount in controversy, which includes hundreds of thousands of dollars of legal fees, exceeds $75,000. Accordingly, diversity jurisdiction under 28 U.S.C. § 1332 is proper, and the Motion to Remand will be denied.

---

[2] Section 8.3 of the MartianCraft Operating Agreement provides for removal of a member "by majority vote of the Board of Directors." (ECF No. 7-1 at 14-15.)

## IV. CONCLUSION

For the reasons stated above, the Motion to Remand will be denied and the Motion to Stay Briefing Schedule will be denied as moot.

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: June 17, 2021